## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BAHRAIN TELECOMMUNICATIONS CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 3:05cv1957 (MRK) |
| DISCOVERYTEL, INC., ANTHONY D. | : | |
| AUTORINO, Individually and as an officer of | : | |
| DiscoveryTel, Inc., and MOHAMMED | : | |
| BARMAWI, Individually and as an officer of | : | |
| DisvoeryTel, Inc., | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OF DECISION</u>

Currently pending in this case are two motions that require the Court to decide whether it has

jurisdiction to entertain a motion for prejudgment remedy by a party to an international arbitration

currently pending in London, and also whether the Court has authority to require a party to disclose

their assets in advance of an evidentiary hearing and ruling on the motion for prejudgment remedy.

*See* Defendants' Motion to Dismiss Plaintiff's Application for Order *Pendente Lite* [doc. # 84];

Plaintiff's Motion for Immediate Disclosure of Assets [doc. # 93].  The motions raise important

issues regarding the interplay among Rule 64 of the *Federal Rules of Civil Procedure*, the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*

(the "Convention"), and a Connecticut statute that provides for issuance of orders "to protect the

rights of parties pending the rendering of an [arbitration] award and to secure satisfaction thereof,"

Conn. Gen. Stat. § 52-422.  For the reasons stated below, the Court rules that it has jurisdiction to

entertain the motion for prejudgment remedy but that it will not grant the motion for immediate disclosure of assets.

## I.

In or about 2004, Bahrain Telecommunications Co. ("Batelco"), a telecommunications company based in the Kingdom of Bahrain, entered into an agreement with DiscoveryTel, Inc., a facilities-based telecommunications provider with its principal place of business in Hartford, Connecticut, for the exchange of two-way telecommunications traffic. The parties had a falling out, and each sued the other. For present purposes, the precise facts underlying the parties' dispute are not relevant. It is sufficient to note that the parties accuse each other of engaging in a variety of improper, as well as illegal, conduct and fraud.

In or about December 2005, DiscoveryTel (the Connecticut-based company) sued Batelco before the High Civil Court of the Kingdom of Bahrain. Promptly thereafter, Batelco (the Bahrain company) sued DiscoveryTel and two of its officers in this action asserting claims for breach of contract and tort. Shortly after commencement of this action, Batelco moved for a prejudgment remedy and DiscoveryTel moved to stay or dismiss the action in favor of arbitration, in accordance with the parties' agreement. After extensive briefing and a hearing, the parties agreed to stay both this action and the Bahrain action in favor of arbitration of all claims in London in accordance with the parties' agreement. Accordingly, on March 20, 2006, this Court stayed the action pending the outcome of the arbitration the parties intended to file in London. *See* Order [doc. # 45]. Batelco's motion for prejudgment remedy was denied without prejudice as premature. *See* Order [doc. # 51].

The parties executed a detailed Arbitration Agreement dated October 4, 2006, which required them to arbitrate all of their disputes before the London Court of International Arbitration ("LCIA")

under the rules of the LCIA. *See* Memorandum in Support of Motion to Dismiss [doc. # 85] Ex. 4 (Arbitration Agreement). The Arbitration Agreement designated the sole arbitrator and contained provisions specifying which law the arbitrator would apply to the U.S. and Bahrain claims of the parties. *Id.* In accordance with the Arbitration Agreement, Batelco filed a Request for Arbitration on October 4, 2006, and on October 10, the LCIA acknowledged receipt of the Request for Arbitration entitled, *Bahrain Telecommunications Company (B.S.C.) v. DiscoveryTel, Inc., Anthony D. Autorino, and Mohammed Barmawi*, Arbitration No. 6834 (the "London Arbitration"). Defendants responded to the Request for Arbitration on November 13, 2006. On November 15, 2006, the LCIA formally appointed Mr. V.V. Veeder, Q.C. as the sole arbitrator (the "Arbitrator"). The parties are currently proceeding with the arbitration in accordance with the rules and procedures of the LCIA.

Meanwhile, on November 1, 2006, Batelco filed an Application for Order *Pendente Lite* [doc. # 58] and Motion for Disclosure of Assets [doc. # 60], in which Batelco sought to discover, attach, and garnish assets of Defendants sufficient to secure the sum of $18 million. The Court promptly issued a scheduling order setting the motions down for a two-day evidentiary hearing in February 2007. *See* Scheduling Order [doc. # 68]. Thereafter, however, Defendants moved for discovery in connection with the prejudgment remedy hearing, and after granting the request for limited discovery, the Court rescheduled the hearing on the prejudgment remedy for March 27-28, 2007. *See* Order [doc.# 95]. In early January 2007, Defendants moved to dismiss Batelco's motions on the ground that the Court lacked jurisdiction to entertain them while the arbitration was pending in London. *See* Defendants' Motion to Dismiss Plaintiff's Application for Order *Pendente Lite* [doc. # 84]. Additionally, on January 17, 2007, Batelco moved for an order requiring Defendants to

disclose their assets in advance of the hearing on the motion for prejudgment remedy. *See* Plaintiff's Motion for Immediate Disclosure of Assets [doc. # 93].

## II.

Defendants advance three arguments in support of their motion to dismiss Batelco's motions for a prejudgment remedy and for disclosure of assets. First, Defendants argue that a federal court lacks authority to entertain a request for an order *pendente lite* when a properly constituted international arbitral tribunal exists that has the power to grant similar relief. In this regard, Defendants point out that the rules of the LCIA, under which the parties have agreed to arbitrate their disputes, expressly grant the Arbitrator "the power": to order any party to "provide security for all or part of the amount in dispute . . . upon such terms as the Arbitral Tribunal considers appropriate"; to order "the preservation . . . of any property or thing under the control of any party"; and "to order on a provisional basis, subject to final determination in an award, any relief which the Arbitral Tribunal would have the power to grant in an award, including a provisional order for the payment of money or the disposition of property as between any parties." Mem. in Supp. of Mot. to Dismiss [doc. # 85] Ex. 11 (The LCIA Rules, Art. 25.1(a)-(c)).

Second, Defendants assert that the Connecticut statute on which Batelco bases its motions, Conn. Gen. Stat. § 52-422, is not available to courts when the arbitration in question is outside the State of Connecticut, and in particular, is an international arbitration.

Third and finally, relying on *New England Pipe Corp. v. Ne. Corridor Found.*, 271 Conn. 329, 336-37 (2004), Defendants contend Batelco cannot obtain relief under Conn. Gen. Stat. § 52-422, unless it shows that a *pendente lite* order is "necessary" or "absolutely required" to protect its

rights, and Batelco has failed to satisfy that rigorous standard. The Court will consider each of Defendants' arguments in turn.

## A.

Relying on the Ninth Circuit's decision in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) and the Third Circuit's decision in *McCreary Tire & Rubber Co. v. CEAT*, 501 F.2d 1032, 1038 (3d Cir. 1974),[1] Defendants argue that both the Convention and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ( "FAA"), deprive this Court of jurisdiction and authority to order injunctions or grant provisional remedies while an international arbitration is pending. This question has occupied the attention of numerous courts and commentators over the years, and there are certainly compelling arguments to be made on both sides of this important issue. *See, e.g.,* Grégoire Marchac, *Interim Measures in International Commercial Arbitration Under the ICC, AAA, LCIA and UNCITRAL Rules*, 10 Am. Rev. Int'l Arb. 123 (1999); William P. Mills, III, Note, *State International Arbitration Statutes and the U.S. Arbitration Act: Unifying the Availability of Interim Relief*, 13 Fordham Int'l L.J. 604 (1990); David L. Zicherman, Note, *The Use of Pre-Judgment Attachments and Temporary Injunctions in International Commercial Arbitration Proceedings: A Comparative Analysis of the British and American Approaches*, 50 U. Pitt. L. Rev. 667 (1989) (hereinafter "Zicherman"); Charles N. Brower & W. Michael Tupman, *Court-Ordered Provisional Measures Under the New York Convention*, 80 Am. J. Int'l L. 24 (1986). However, the short answer to Defendants is that the Second Circuit has held that federal courts have both the jurisdiction and

---

[1] Defendants also invoke the Fourth Circuit's decision in *I.T.A.D. Assoc., Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir. 1981). However, that decision contains no analysis at all and merely parrots, in a single sentence, *McCreary*'s holding that the Convention divests a court of jurisdiction to grant a prejudgment attachment. Therefore, *I.T.A.D.* adds nothing beyond *McCreary*.

authority to grant injunctions and provisional remedies in the context of pending arbitrations, including international arbitrations, and this Court must adhere to those decisions until the Second Circuit directs otherwise.

> Regarding injunctions, this Court has had occasion previously to observe that the

> Second Circuit has made it clear in a series of decisions that the Court has both the power and duty to entertain a motion for preliminary injunction pending the results in [an] arbitration. And this is true even though, as is the case here, the parties are entitled under the rules of the arbitral tribunal they have chosen to seek *pendente lite* relief directly from the arbitrator.

*Discount Trophy & Co., Inc. v. Plastic Dress-Up Co.*, No. 3:03cv2167(MRK), 2004 WL 350477, at *7 (D. Conn. Feb. 19, 2004) (citing *Am. Express Fin. Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998), *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990), and *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984)). Indeed, in *Thorley*, the Second Circuit reversed a district court that had declined to grant an injunction on the grounds that the parties could obtain one from the arbitrators themselves. The Second Circuit stated, "[a]s we [have previously] explained . . . , the expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits. Nor is this duty affected by the pro-arbitration policy manifested in the FAA." *Thorley*, 147 F.3d at 231 (citations omitted). Therefore, the Ninth Circuit's decision in *Simula* is not the law in the Second Circuit, and that is true even in the context of an international arbitration. *See, e.g.*, *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("We hold that entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to [the Convention]"); *Venconsul, N.V. v. TIM Int'l N.V.*, No. 03Civ.5387 (LTS)(MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) (entertaining

preliminary injunction request in the context of an arbitration before the International Chamber of Commerce ("ICC")); *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Constr. Co.*, 598 F. Supp. 754, 758 (S.D.N.Y. 1984) ("The fact that this dispute is to be arbitrated [in Paris under the rules of the ICC] does not deprive the Court of its authority to provide provisional remedies," such as a preliminary injunction).

The Second Circuit has similarly rejected the approach embraced by the Third Circuit in *McCreary*. In *McCreary*, the Third Circuit held that issuance of provisional remedies, such as an attachment, in aid of an international arbitration is forbidden by the Convention. *McCreary*, 501 F.2d at 1038. *McCreary*'s reasoning–that the Convention (unlike the FAA) somehow prohibits provisional remedies in international arbitration–has long been harshly criticized by courts and commentators. *See, e.g.*, *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1178-80 (C.D. Cal. 2001) ("The *McCreary* court's argument in support of [its decision] . . . is unsound"); *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1241-42 (S.D.N.Y. 1992) (*McCreary's* reasoning "is facially absurd"); *Carolina Power & Light Co. v. Uranex*, 451 F. Supp. 1044, 1051-52 (N.D. Cal. 1977) ("This court, however, does not find the reasoning of *McCreary* convincing"); Zicherman, at 666-67. *But see Cooper v. Ateliers de la Motobecane, S.A.*, 57 N.Y.2d 408, 415 (1982). There is little point reprising in this opinion the many criticisms of *McCreary*. Suffice it to say that the Court agrees with those courts that have rejected *McCreary*'s reasoning and holding. Contrary to the holding in *McCreary*, this Court can discern nothing in the Convention that divests federal courts of jurisdiction to issue provisional remedies or other *pendente lite* orders, such as an attachment, when appropriate in international arbitrations, and certainly no reason to differentiate between domestic and international arbitrations in that regard.

7

More important than this Court's own views of *McCreary*, however, the Second Circuit itself has expressly rejected the notion that the Convention prohibits issuance of provisional remedies in aid of international arbitrations. Thus, in *Borden,* the Second Circuit explained as follows:

> In the instant case, far from trying to bypass arbitration, Borden sought to have the court *compel* arbitration. New York law specifically provides for provisional remedies in connection with an arbitrable controversy, . . . and the equitable powers of federal courts include the authority to grant it. Entertaining an application for such a remedy, moreover, is not precluded by the Convention but rather is consistent with its provisions and spirit.

*Borden*, 919 F.2d at, 826 (citations omitted) (referencing a provision of New York law that permits a court to order an attachment or an injunction in aid of arbitration). The decision in *Borden* expressly relied upon and quoted from Judge Learned Hand's decision in *Murray Oil Prods. Co. v. Mitsui & Co.*, 146 F.2d 381, 384 (2d Cir. 1944), where the court permitted a district court to continue a prejudgment attachment pending completion of an arbitration.[2] As Judge Hand noted, the desire for prompt decisions in arbitration, as manifested in both the Convention and the FAA, "is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." *Murray Oil*, 146 F.2d at 384; *see also Gerling Global Reinsurance Corp. v. Sompo Japan Ins. Co.*, 348 F. Supp.2d 102, 105 (S.D.N.Y. 2004) (district court has jurisdiction under the Convention to consider "issuance of provisional remedies to ensure that an arbitration panel can afford meaningful relief"); *Lyons Hollis Assoc., Inc. v. New Tech. Partners, Inc.*, 278 F. Supp.2d 236, 246-47 (D. Conn. 2003) (granting attachment in aid of domestic arbitration).

---

[2] *McCreary* declined to follow the Second Circuit's approach in *Murray Oil* on the stated ground that the Supreme Court had rejected *Murray Oil* in *Bernhardt v. Polygraphic Co. of Am., Inc.*, 350 U.S. 198 (1956). However, as the district court explained in *Uranex*, the Supreme Court in *Bernhardt* did no such thing. *Uranex,* 451 F. Supp. at 1051 n.3.

At various times, Defendants have suggested that even if Second Circuit precedent permits injunctive relief in the context of an international arbitration, prejudgment remedies differ qualitatively from injunctive relief. In particular, Defendants have asserted that a preliminary injunction intrudes less on the arbitrators' powers and authority than a prejudgment remedy because a preliminary injunction is designed to maintain the *status quo*, while an attachment alters the *status quo*. It is not at all clear how this argument bears on the question whether this Court has jurisdiction to consider a motion for provisional remedy under the Convention. In any event, the Court disagrees with Defendants' characterization of these two remedies and their intrusiveness on the arbitral function. Like a preliminary injunction, a prejudgment remedy also is designed to maintain the *status quo*–namely, the parties' financial *status quo* pending issuance of a final judgment. *See E. J. Hansen Elevator, Inc. v. Stoll*, 167 Conn. 623, 629 (1975) (Prejudgment remedies are "primarily designed to forestall any dissipation of assets by the defendant and to bring them into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff may recover . . . ."). A prejudgment remedy does not interfere with the arbitral process but merely ensures that there will be assets available to satisfy any judgment the arbitrators themselves may render. Moreover, consideration of a motion for a prejudgment remedy normally will require a court to delve less deeply into the merits of the parties' disputes (and thus intrude less deeply into the domain of the arbitrators) than a motion for a preliminary injunction, since the standard for granting a prejudgment remedy–at least in Connecticut–is only probable cause and does not require a showing of likelihood of success on the merits and irreparable harm. *See, e.g.*, *Three S. Dev. Co. v. Santore*, 193 Conn. 174, 175 (1984) ("probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false.").

9

Finally and importantly, the Court notes that the rules of the LCIA, which the parties in this case selected for their arbitration, expressly contemplate that in appropriate circumstances, parties to pending arbitrations may seek provisional remedies from courts. Thus, Article 25.3 provides as follows:

> The power of the arbitral Tribunal under Article 25.1 [to grant provisional remedies] shall not prejudice howsoever any party's right to apply to any state court or other judicial authority for interim or conservatory measures before the formation of the arbitral Tribunal and, in exceptional cases, thereafter. Any application and any order for such measures after the formation of the Arbitral Tribunal shall be promptly communicated by the applicant to the Arbitral Tribunal and all other parties.

Mem. in Supp. of Mot. to Dismiss [doc. # 85] Ex. 11. Since the paramount purpose of the Convention, like the FAA, is to enforce agreements to arbitrate in accordance with their terms, it would be odd in the extreme if the Convention were interpreted to divest this Court of jurisdiction to grant a remedy that the parties' own arbitration agreement (through adoption of the LCIA rules) explicitly permits.

Accordingly the Court holds that the Convention does not deprive this Court of jurisdiction to issue *pendente lite* orders, such as a prejudgment attachment, in connection with a pending international arbitration. *But see Cordoba Shipping Co. v. Maro Shipping Ltd.*, 494 F. Supp. 183, 188 (D. Conn. 1980) ("Prejudgment attachment in [the context of an international arbitration] is inappropriate since arbitration under the Convention (rather than the [FAA]) divests the court of jurisdiction.") (citing *McCreary*, 501 F.2d 1032).

### B.

Rule 64 of the *Federal Rules of Civil Procedure* provides as follows:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the

judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . . . The remedies thus available include . . . attachment, garnishment . . . or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies. And although the federal civil rules govern the conduct of the action in federal court, "state law determines when and how a provisional remedy is obtained." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2932, at 7 (2d ed. 2006). Limitations and other state law "provisions about the circumstances and manner in which provisional remedies can be used, must be honored" by the federal court. *Id.*; *see ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426, 432 (2d Cir. 2000) (applying state statutory limitation on issuance of provisional remedies in aid of arbitration).

In this case, Batelco seeks a prejudgment remedy under section 52-422 of the Connecticut General Statutes.[3] That section expressly authorizes courts to issue provisional remedies to protect the rights of parties to a pending arbitration:

At any time before an award is rendered pursuant to an arbitration *under this chapter*, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is not in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

---

[3] Batelco has not sought to obtain a prejudgment remedy directly under Conn. Gen. Stat. § 52-278b**,** Connecticut's general prejudgment remedy section. Therefore, this Court has no occasion to consider whether it could issue the prejudgment remedy Batelco seeks directly under § 52-278b, bypassing § 52-422 entirely.

Conn. Gen. Stat. § 52-422 (emphasis added).[4] Seizing on the words "under this chapter" highlighted above, Defendants argue that the Connecticut legislature intended to limit § 52-422 to arbitrations that are pending in the State of Connecticut, and that as a result, the statute may not be used as a basis for issuing a provisional remedy in connection with an arbitration pending out of state.

Defendants' argument is undermined, however, by the fact that the Connecticut General Assembly adopted the United Nations Commission on International Trade Law ("UNCITRAL") Model Law on International Commercial Arbitration, *see* Conn. Gen. Stat. § 50a-100, *et seq*., which applies to international arbitrations such as this one. Most relevant here is § 50a-109, which provides: "Unless otherwise provided in the arbitration agreement, it is not incompatible with an arbitration agreement for a party to request from a court, before or during arbitral proceedings, an interim measure of protection and for a court to grant such measure." Conn. Gen. Stat. § 50a-109. This statute supports Plaintiffs' argument that the Connecticut General Assembly sanctioned provisional remedies by Connecticut courts in cases such as this one. Defendants assert that § 50a-109 merely authorizes the enforcement within Connecticut of provisional remedies granted by courts outside of Connecticut. The Court, however, finds no language in § 50a-109 or related statutes to suggest that § 50a-109 refers only to the *enforcement* of provisional remedies or precludes the granting of provisional remedies related to arbitrations pending outside of Connecticut. In fact, the most recent report issued by the UNCITRAL Working Group on Arbitration confirms that the provisional remedy section was not intended to be limited to arbitrations pending within the forum

---

[4] Section 52-422 permits a court to issue provisional remedies only when an arbitration is pending. *See Goodson v. Connecticut*, 232 Conn. 175, 180 (1995) ("[A] pending arbitration is an essential condition that must exist before § 52-422 may be invoked."). It is for that reason that this Court previously denied without prejudice Batelco's motion for a *pendente lite* order as premature, since at that time, there was no pending arbitration between the parties. *See* Order [doc. # 51].

12

state.  *See* U.N. Comm. On Int'l Trade Law, Working Group II (Arbitration), Settlement of
Commercial Disputes: Interim Measures of Protection, at 7-8, U.N. Doc. A/CN.9/WG.II/WP.141
(Dec. 5, 2005) ("[T]he intention [is] that the provision on court-ordered interim measure[s] should
apply irrespective of the country where the arbitration takes place.").

Despite § 50a-109, Defendants seek support for their argument in the Second Circuit's
decision in *ContiChem*, 229 F.3d 426.  In that decision, the court held that New York's statute on
provisional remedies in aid of arbitration was limited to domestic arbitrations and did not apply to
international arbitrations.  *ContiChem*, 229 F.3d at 432-33.  In reaching that conclusion, the Second
Circuit relied upon the language of the New York statute, which authorized issuance of provisional
remedies but only by "'[t]he supreme court in the county *in which an arbitration is pending*.'"  *Id.* at
430 (emphasis added) (quoting N.Y. C.P.L.R. 7502(c) (2000)).  The court also noted that New York
had a history of case law from its highest court opposing the issuance of provisional remedies in aid
of international arbitrations. *See Cooper*, 57 N.Y.2d 408.  Finally, the court looked to the legislative
history of the New York statute, which "reflect[ed] the drafters' intent not to affect proceedings
governed by international agreements such as the Convention."  *ContiChem*, 229 F.3d at 432.
Accordingly, the Second Circuit held that "the legislative history of Rule 7502(c) supports the plain
language of the statute, which precludes courts applying New York law from considering provisional
remedies in aid of foreign arbitrations."  *Id.*

Connecticut's statute has neither the language nor legislative history of the New York law as
it existed in 2000.[5]  While § 52-422 refers to an arbitration "under this chapter," there is no locational

---

[5]  In 2005, New York amended C.P.L.R. 7502(c) to allow its courts to grant provisional
remedies for arbitrations that are pending outside of the state.  *See* Act of Oct. 4, 2005, 2005 N.Y.
Sess. Laws ch. 703; Houston Putnam Lowry & Peter W. Schroth, *Survey of 2004-2005*

limitation in the statute as was true with the New York's Rule 7502(c).[6] Nor is there any suggestion that the language "under this chapter" must be taken literally, or else it would exclude issuance of provisional remedies even for Connecticut-based arbitrations that are governed by other laws, such as the FAA. Nor is there any legislative history from the Connecticut General Assembly indicating a desire to restrict § 52-422 to domestic arbitrations only. Finally, unlike New York's highest court, the Connecticut Supreme Court has never indicated any hostility toward issuance of provisional remedies in aid of international arbitrations.

The Connecticut Supreme Court has not yet had occasion to consider the application of § 52-422 to arbitrations pending beyond the state's borders. Defendants make much of a statement in *Bennett v. Meader*, 208 Conn. 352 (1988), that "[o]ur comprehensive statutory scheme regarding arbitration, General Statutes §§ 52-408 through 52-424, controls arbitrations *in this state* where the common law is inconsistent with our statutory scheme." *Id.* at 355 (emphasis added); *see also McCaffrey v. United Aircraft Corp.*, 147 Conn. 139, 141 (1960) ("The statutes relating to, and governing, arbitration *in this state* are set out in chapter 909 of the General Statutes") (emphasis added). However, these passing comments by the Connecticut Supreme Court cannot shoulder the weight that Defendants place upon them.

_____

*Developments in International Law in Connecticut*, 79 Conn. B.J. 131, 146-47 (2005) (noting that the 2005 amendment to New York's provisional remedies law made it comparable to Connecticut General Statute § 50a-109).

[6] Defendants seize on other provisions within Connecticut's statutory scheme for arbitrations that refer to a superior court, or a superior court where a party resides, as support for their claim that § 52-422 does not apply when an arbitration is pending out of state. It is hardly surprising that a Connecticut statute refers to the "superior court." And that fact alone does not indicate that the General Assembly intended to bar resort to § 52-422 when a Connecticut resident whose assets are likely found in Connecticut is involved in an arbitration pending outside of the state.

One Superior Court judge has addressed the meaning of the phrase "under this chapter" in § 52-422. In *MacArtney v. GCG SBIC Mgmt. Corp.*, No. FSTCV054003953S, 2005 WL 1970956 (Conn. Super. Ct. June 28, 2005), Judge Thomas Nadeau held that a Connecticut court has authority, pursuant to § 52-422, to issue a prejudgment remedy in connection with a claim being arbitrated outside the state (in that case, New York). *Id.* at *1. After considering an argument identical to the one advanced by Defendants in this case and after examining use of the phrase "under this chapter" throughout the General Statutes, Judge Nadeau explained that defendants' argument was "unpersuasive" and that they "attached far more significance upon the phrase 'under this chapter' than is justified." *Id.* at 589 & n.5. Instead, the judge held that the only express requirement related to that language was that the agreement to arbitrate be in writing. *Id.* at 588 (citing Conn. Gen. Stat. § 52-408 and *Bennett*, 208 Conn. at 359). That the parties had agreed to arbitrate their dispute beyond the borders of Connecticut, did not strip the court of jurisdiction or authority to issue a prejudgment remedy to protect the rights of a party to that arbitration. *See id.*

The Court acknowledges that this question is a difficult one and that Defendants arguments are not without force. However, after considering the implications of § 50a-109 and in the absence of more definitive guidance from the Connecticut Supreme Court, the Court is inclined to agree with Judge Nadeau. The Court finds no reason in the language of § 52-422, its legislative history, or Connecticut case law to suppose that the General Assembly intended to prevent Connecticut courts from issuing provisional remedies affecting parties who were properly before those courts, solely because the situs of the arbitration involving those parties was located in another state, or in this case, out of the country. Accordingly, under Rule 64, this Court may consider a request for a

provisional remedy under Conn. Gen. Stat. § 52-422 even though the arbitration in question is taking place in London.

## C.

That the Court has jurisdiction to entertain a motion for a provisional remedy does not mean that the party requesting it has satisfied the requirements for its issuance. The Connecticut Supreme Court has had occasion to consider the requirements for issuance of a provisional remedy under § 52-422, and that court has made it clear a provisional remedy under § 52-422 should be granted "only in extraordinary circumstances." *See New England Pipe Corp.*, 271 Conn. at 336-37. Examining the language of § 52-422, which authorizes courts to issue such process "as may be necessary to protect the rights of the parties pending the rendering of an award," the Connecticut Supreme Court held that this language evidenced the legislature's intent to empower courts to issue *pendente lite* orders only when such relief was "absolutely required," "essential," or "indispensable" to "protect" or "safeguard" the rights of a party to a pending arbitration. *Id.* at 336 (internal quotations marks omitted). As the Supreme Court explained, a party seeking relief under § 52-422 must show that its rights "will be lost irretrievably in the absence of judicial intervention." *Id.*

Defendants argue that Batelco cannot satisfy this stringent standard because the Arbitrator is authorized to issue provisional remedies. In view of the Connecticut Supreme Court's emphasis on the extraordinary nature of relief under § 52-422, Defendants' arguments are substantial. *Cf. Al Nawasi Trading Co. v. BP Amoco Corp.*, 191 F.R.D. 57, 59 (S.D.N.Y. 2000) (criticizing party seeking preliminary injunction for "consciously avoid[ing] taking steps that would give the arbitrator the ability to act" to give the party the relief it sought). Furthermore, the Court notes that the parties have agreed to abide by the LCIA Rules, which, like § 52-422, appear to contemplate resort to courts

for provisional relief during the pendency of an arbitration only in "exceptional cases." Mem. in Supp. of Mot. to Dismiss [doc. # 85] Ex. 11.

Unlike Defendants, however, this Court cannot conclude on the present record that Batelco will be unable to satisfy the standard for relief under § 52-422. Batelco may be able to establish that the circumstances it is facing are indeed extraordinary, that the Arbitrator has no power to effectively attach or affect assets of Defendants that reside in Connecticut or outside London, that the Arbitrator has indicated an unwillingness to act or act promptly, or that other circumstances exist that make it essential or necessary for this Court to act to protect Batelco's rights. That is the purpose of the evidentiary hearing that is currently scheduled, and the Court sees no reason on the present record to dispense with the evidentiary hearing to which Batelco is entitled. Accordingly, the Court will deny Defendants' Motion to Dismiss Plaintiff's Application for Order *Pendente Lite* [doc. # 84], without prejudice to Defendants' right to contest the need for the *pendente lite* orders that Batelco seeks.

On its face, this Court's conclusion that it should consider, among other factors, the Arbitrator's ability to grant Batelco the relief it seeks, might appear to be contrary to the Second Circuit's decision in *Thorley*, which held that the district court erred in declining a preliminary injunction because the arbitrators themselves could grant one. *Thorley*, 147 F.3d at 231. However, this case differs from *Thorley* in two material respects. First, and foremost, the Connecticut Supreme Court's decision in *New England Pipe* requires this Court to consider whether the order requested is "absolutely required." There was no such limitation in *Thorley*. Second, the parties' Arbitration Agreement, which incorporates the LCIA Rules, suggests that the Court should consider whether "exceptional circumstances" exist that require it to act during the pendency of the parties' arbitration.

No such agreement existed in *Thorley*. To the contrary, the Second Circuit in *Thorley* pointed out that the parties' agreement explicitly authorized the parties to seek a preliminary injunction in a court of competent jurisdiction. *Id.* That said, the Court hastens to add that nothing in this opinion should be construed as suggesting that the Arbitrator's ability, or willingness, to grant Batelco a provisional remedy is necessarily determinative of the issue of necessity under § 52-422. It is not.

## II.

Batelco has also filed a Motion for Immediate Disclosure of Assets [doc. # 93], in which Batelco asks this Court to order Defendants to disclose the existence and location of their assets in advance of a hearing and determination of Batelco's Application for Order *Pendente Lite*. Ordinarily, a party is entitled to a court order requiring disclosure of assets once that party has shown that it is entitled to a prejudgment remedy, by establishing that there is probable cause to sustain its claims. *See* Conn. Gen. Stat. § 52-278n(c). However, Batelco argues that it need not await the probable cause hearing to determine whether Defendants have any assets to attach. Batelco's motion is founded on a decision of Magistrate Judge Thomas P. Smith, in which he ruled that he could issue an order for disclosure of assets "*prior* to, and *independent of*, a probable cause determination" under § 52-422. *Insurity, Inc. v. Mutual Group, Ltd.,* 260 F. Supp. 2d 486, 491 (D. Conn. 2003) (emphasis added).

The parties expend most of their energy in either championing or condemning Magistrate Judge Smith's decision in *Insurity*. To be sure, *Insurity* arose in an odd context. Apparently, the parties themselves had agreed that "considerations of judicial economy, cost, and common sense all suggest that, before unnecessary time and expense are wasted conducting a more protracted evidentiary hearing as to probable cause *vel non* for the granting of a prejudgment remedy," the

18

court should first determine if there were any assets to fight over. *Id.* As a result, Magistrate Judge Smith stated that "by stipulating that the court address the issue [of] disclosure first the parties have voluntarily waived whatever right they may have had under [Conn. Gen. Stat.] § 52-278n(c) that the probable cause issue be decided first. Surely, this right is waivable." *Id.* at 488-89. Magistrate Judge Smith also stated that the *Federal Rules of Civil Procedure* "provide ample justification for addressing the pending motion for a order of disclosure first, *as the parties have asked*." *Id.* (emphasis added).

Batelco argues that *Insurity* holds that a court can order disclosure of assets in advance of a probable cause determination even over a party's objection. However, because of the parties' stipulation, *Insurity* does not hold as Batelco suggests. Nor need this Court decide at this time whether Connecticut law permits a court, over objection, to order disclosure of assets in advance of a probable cause determination. For even if that were possible under Connecticut law, since Batelco is proceeding under Conn. Gen. Stat. § 52-422, it must nonetheless show that the relief it seeks is "necessary" or "absolutely essential" to protect its rights. *See New England Pipe Corp.*, 271 Conn. at 336-37. And to date, Batelco has made no showing that it requires such an order in advance of the hearing that has long been scheduled for March. Indeed, it would demean the concept of "necessity" if Batelco were entitled to immediate disclosure of assets merely because it wishes to know whether it is worth its while to pursue the hearing that it has demanded.

Of course, as *Insurity* suggests, it may often be sensible for parties to determine first whether sufficient assets exist to warrant the time and effort of a prejudgment remedy hearing. And if the parties in this case had agreed on that approach, they could certainly pursue it, as *Insurity* holds. However, Defendants have not agreed to proceed in that fashion, and therefore, Batelco must

19

demonstrate that immediate disclosure of Defendants' assets in advance of a probable cause determination is necessary to protect its rights, as is required by § 52-422. Batelco has not done so to date, though the Court does not discount the possibility that events could occur between now and the March hearing that would add sufficient urgency to Batelco's request. Therefore, the Court will deny without prejudice Batelco's Motion for Immediate Disclosure of Assets [doc. # 93].

### III.

For the reasons stated, the Court DENIES Defendants' Motion to Dismiss Plaintiff's Application for Order *Pendente Lite* [doc. # 84], without prejudice to Defendants' right to contest the need for the *pendente lite* orders that Batelco seeks. Also, the Court DENIES without prejudice Batelco's Motion for Immediate Disclosure of Assets [doc. # 93].

IT IS SO ORDERED,

/s/ _____Mark R. Kravitz_____
United States District Judge

Date at New Haven, Connecticut: **March 9, 2007**.